UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Stanley D. Rothe,

        Plaintiff,                               Case No.  1:15cv211

        v.                                    Judge Michael R. Barrett

The Duke Energy Long Term
Disability Plan, *et al*.,

        Defendants.

## OPINION & ORDER

This matter is before the Court upon the Motions for Judgment filed by Defendants Duke Energy Long Term Disability Plan and Liberty Life Assurance Company of Boston (Doc. 12) and Plaintiff Stanley D. Rothe (Doc. 13).  These motions were filed pursuant to *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998).  The motions have been fully briefed.  (Docs. 15, 16, 17, 18).

## I.    BACKGROUND

Plaintiff Stanley D. Rothe brings this action under Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq.* based on the denial of long-term disability benefits.

Plaintiff previously worked as a Gas Controller for Duke Energy Corporation ("Duke Energy").  Plaintiff filed a claim for long term disability which began on January 3, 2013. (Doc. 11, Administrative Record, LL00041) (hereinafter "LL##").  Plaintiff's claim was based on a diagnosis of "spinal fusion" and "backache NOS."  (LL00041).  Plaintiff submitted his claim pursuant to the Group Disability Income Policy ("the Policy")

issued by Defendant Liberty Life Assurance Company of Boston ("Liberty") to Duke Energy.

> Under Section 2 of the Policy, "Disability" or "Disabled" is defined as:
>
> i. if the Covered Person is eligible for the 24 Month Own Occupation Benefit, "Disability" or "Disabled" means during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
>
> ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

(LL00007).  Plaintiff's appeal is limited to the denial of benefits under the "Own Occupation" provision.  "Own Occupation" is defined in the Policy as:

> the Covered Person's occupation that he was performing when his Disability or Partial Disability began.  For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.

(LL00009).  As part of Liberty Life's review of Plaintiff's claim, Vocational Case Manager Ellen Levine determined as part of her "Occupational Analysis/Vocational Review" that Plaintiff's "own occupation as found in the national economy" is most often performed at a sedentary work level.  (LL00545).  Levine explained that the Department of Labor defines the sedentary work level as exerting up to 10 pounds of force occasionally (up to 1/3 of the time) and/or a negligible amount of force frequently (1/3 to 2/3 of the time) to lift, carry, push, pull or otherwise move objects, including his own body; sitting most of the time, but may involve walking or standing for brief periods of time.  (LL00545). Levine explained that Department of Labor definition states that sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.  (LL00545).

On April 23, 2014, Liberty Life determined that Plaintiff was not disabled because he could perform his "own occupation" as defined in the Policy.   (LL00379-385). Plaintiff administratively appealed this determination and submitted additional materials. (LL00334, LL00162-178).   On December 23, 2014, Liberty Life upheld its denial on appeal.  (LL00087-90).

## II.    ANALYSIS

### A. Standard of review

The parties disagree as to the proper standard of review.  The decision of a plan administrator is *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)).   If an ERISA benefits plan does give the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the decision to deny benefits is reviewed under an "arbitrary and capricious" standard of review.  *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 291-92 (6th Cir. 2005).

Defendants argue that the decision to deny benefits should be reviewed under the arbitrary and capricious standard.  Plaintiff argues that nowhere in the record is there a plan document that grants the necessary discretionary authority.  However, Defendants point to Section 7 of the Policy which states:

> Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

(LL000034).   Defendants explain that ERISA requires that a plan be maintained pursuant to a written document, but does not specify what is considered to be a plan

3

document.    Defendants explain further that in this instance, the Policy defines the benefits, and is incorporated by reference into Duke's Long Term Disability Plan.

As Defendants pointed out, ERISA requires that "[e]very employee benefit plan . . be established and maintained pursuant to a written instrument."  29 U.S.C. § 1102(a)(1).  The Sixth Circuit has held that an insurance policy can be treated as a plan document.  *Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 566 (6th Cir. 2013) (citing *Musto v. Am. Gen. Corp.*, 861 F.2d 897, 901 (6th Cir. 1988) ("[T]he insurance policy, in this case, is the 'written instrument' required by [ERISA]."); *Hogan v. Life Ins. Co. of N. Am.*, 521 Fed.Appx. 410, 415, No. 12–5902, 2013 WL 1316542, at *4–5 (6th Cir. 2013) (unpublished) (citing cases and noting "[t]his circuit has treated group insurance policies as benefit plans")).  Because Section 7 of the Policy grants Liberty Life discretionary authority to determine eligibility for benefits and to construe the terms of the plan, the arbitrary and capricious standard of review applies.

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action."  *Calvert*, 409 F.3d at 292 (quoting *McDonald v. W.-S. Life Ins. Co.,* 347 F.3d 161, 169 (6th Cir. 2003)).  Under this standard of review, this Court must determine "whether, in light of the plan's provisions, the plan administrator's decision was rational."  *Id.*  "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."  *Id.*

Plaintiff has made several arguments as to why Liberty Life's denial of benefits was arbitrary and capricious.  The Court will address each one in turn.

### B.  Conflicts of interest

Plaintiff argues that Liberty Life's benefits denial is arbitrary and capricious because Liberty Life has a clear conflict of interest because it decides eligibility for benefits and pays those benefits; and relies in part upon non-examining physician reviews and employee claim evaluators.

The Sixth Circuit has made it clear that a court must "take into account the existence of a conflict of interest that results when, as in this case, the plan administrator who decides whether an employee is eligible for benefits is also obliged to pay those benefits" to the claimant.  *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006), *aff'd sub nom. Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008); *Firestone*, 489 U.S. at 115 (explaining that such a conflict must be weighed as a factor).

Similarly, the Sixth Circuit has "observed that a plan administrator, in choosing the independent experts who are paid to assess a claim, is operating under a conflict of interest that provides it with a 'clear incentive to contract with individuals who were inclined to find in its favor that [a claimant] was not entitled to continued [disability] benefits.'"  *Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 508 (6th Cir. 2005) (quoting *Calvert.*, 409 F.3d at 292).  However, conclusory allegations of bias on the part of an independent expert cannot form the basis of a finding that a decision to credit one medical opinion over another was arbitrary and capricious.  *Id.* (explaining that in absence of statistical evidence to suggest that the independent expert consistently opined claimants are not disabled, the defendant did not acted arbitrarily and capriciously in crediting the opinion of the reviewing physician over that of

the treating physician); *see also Cook v. Prudential Ins. Co. of Am.*, 494 F. App'x 599,

605 (6th Cir. 2012) (allegations of bias insufficient where plaintiff offers "no more than

cursory statements that lead only to the innocuous conclusion that [the doctor] has been

involved in other independent medical reviews; they do not suggest that [the doctor] had

any tendency to decide cases against the claimants."). Here, Plaintiff has not presented

any evidence to support his claim of bias on the part of the independent experts used by

Liberty Life in their review of Plaintiff's claim.

Finally, the Sixth Circuit has held that "[w]hether a doctor has physically

examined the claimant is indeed one factor that we may consider in determining

whether a plan administrator acted arbitrarily and capriciously in giving greater weight to

the opinion of its consulting physician." *Kalish*, 419 F.3d at 508.

Therefore, in determining whether Liberty Life's decision was arbitrary and

capricious, the Court will consider that Liberty Life determines eligibility for benefits and

then is also responsible for paying those benefits. The Court will also consider what

weight Liberty Life gave to its consulting physicians who have not examined Plaintiff.

## C. Job requirements

Plaintiff argues that Liberty Life's decision to deny benefits was arbitrary and

capricious because Liberty Life disregarded Plaintiff's job requirements. Plaintiff

explains that a natural gas pipeline system gas controller must be able to work 12-hour

shifts and there is a 12-hour sitting requirement. Plaintiff also explains that a gas

controller must be mentally alert and be able to make quick decisions.

Part of the claim file is a document entitled "Duke Physical Job Evaluation Form"

which was completed by Duke Energy. (LL00094). This Form states that Plaintiff's job

as Gas Controller requires 12 hours of sitting.  (LL00094).  In the comment section there is a note that "Gas Controllers work 12 hour shifts.  This form was filled out for an average 12 hour shift."  (LL00095).  The job description also requires an employee to be able to use judgment and initiative to make decisions and take action to control gas pressures, flows and odorization in order to assure continuous and reliable delivery of nature gas to customers.  (LL00094).

Plaintiff argues that a review of the reports by all of the Liberty Life evaluators leads to the conclusion that the evaluators never saw or considered the "Duke Physical Job Evaluation Form."  Plaintiff explains that these evaluators all assumed Plaintiff worked an eight-hour shift and failed to address the mental requirements of the job.

Defendants respond that the Policy requires a determination of whether Plaintiff was disabled from his "own occupation as found in the national economy" not Plaintiff's own job.  Defendants explain that Vocational Case Manager Ellen Levine determined as part of her "Occupational Analysis/Vocational Review" that Plaintiff's job tasks are best represented in the national economy by the description found in United States Department of Labor's Dictionary of Occupational Titles ("DOT"): Gas Dispatcher.  (LL00544).  Plaintiff responds the term "own occupation as found in the national economy" is ambiguous and should be construed in his favor.

In *Osborne v. Hartford Life & Acc. Ins. Co.*, 465 F.3d 296, 300 (6th Cir. 2006), the Sixth Circuit found that the policy term "own occupation" was not ambiguous.  The court also concluded that the insurance company's use of the DOT to determine the claimant's "own occupation" was not arbitrary and capricious.  *Id.* at 299.  The court explained:

> The word "occupation" is sufficiently general and flexible to justify determining a particular employee's "occupation" in light of the position descriptions in the Dictionary rather than examining in detail the specific duties the employee performed. "Occupation" is a more general term that seemingly refers to categories of work than narrower employment terms like "position," "job," or "work," which are more related to a particular employee's individual duties. Although reasonable persons may disagree over the most appropriate methodology for determining a particular employee's "occupation," we cannot say that Hartford transgressed the boundaries of its broad discretion under its insurance policy and the ERISA plan to make disability determinations.

*Id.* Here, the Policy includes additional clarification that the claimant's "own occupation" is defined as the claimant's "own occupation as found in the national economy." Therefore, the Court concludes this term is not ambiguous, and it was not arbitrary and capricious for Liberty Life to rely upon Levine's analysis which was based on sources such as the DOT. In that same vein, it was not arbitrary and capricious for Liberty Life's evaluators to fail to discuss the 12-hour shift requirement or the mental requirements of the Gas Controller position as it was performed at Duke Energy.

Plaintiff also argues that Liberty Life's decision to deny benefits was arbitrary and capricious because Liberty Life disregarded the federal safety regulations that apply to Plaintiff's job as a natural gas pipeline system gas controller. Plaintiff maintains that a gas controller cannot safely perform his job with significant pain issues, mental health and alertness issues, sleep disturbance, fatigue, and opiate drugs in his system. Plaintiff explains that he would fail any required drug test and would be disqualified to serve as a gas controller. Plaintiff points out that Levine's report fails to state that a Gas Dispatcher is an occupation regulated by the U.S. Department of Transportation, and none of the federal minimum safety standards regulations were considered by any of the Liberty Life evaluators. Defendant responds that multiple doctors have opined that

8

there is no evidence of side effects due to Plaintiff's medications.

The record shows that on July 9, 2013 Dr. Jamie Lee Lewis completed an Independent Peer Review Report. Dr. Lewis is board certified as a specialist in physical medicine, rehabilitation and pain medicine. Dr. Lewis reviewed the office notes of Dr. Michael Rohmiller. Dr. Rohmiller is an orthopedic surgeon who treated Plaintiff. Dr. Lewis concluded that there is no documentation in Dr. Rohmiller's office notes to support functional impairment due to adverse medication side effects. (LL00939).

On December 11, 2013, Dr. David Monti, Jr., reviewed the medical records in the file at that time and issued a Clinical Case Review Report. Dr. Monti is a fellow in the American Academy of Physical Medicine and Rehabilitation. Dr. Monti noted that Plaintiff did not appear to have any side effects from his medications. (LL00435). Plaintiff argues that Dr. Monti ignored a July 18, 2013 letter from Dr. Rohmiller which states that Plaintiff's medications caused drowsiness. However, in discussing Dr. Monti's report in the denial of benefits letter dated April 23, 2014, Liberty Life notes Dr. Monti's Report states: "Although there is nothing in the medical notes, in a letter from Dr. Rohmiller on 7/18/13, he opines that the medications have caused the claimant drowsiness. Although he does claim this, there is nothing in the medical record to support this from any of the other treating providers nor is there any evidence in his notes suggesting that these medications are causing any undue side effects." (LL00382).

On November 24, 2014, Dr. Milton Klein and Dr. Peter Sugerman issued a Medical Evidence Report after reviewing the medical evidence and speaking to Plaintiff's treating physicians. Dr. Klein is a board certified physical medicine and

rehabilitation specialist who is also board certified in pain medicine.  Dr. Sugerman is a board certified psychiatrist.  Dr. Klein explained that the medical evidence does not support any adverse side effects being caused by Plaintiff's medications and opined that the medications have no negative impact on functional capacity.  (LL00121).

Therefore, the record does not support Plaintiff's position that his medications caused drowsiness or side-effects which would make him "unable to perform the Material and Substantial Duties of his Own Occupation."  Moreover, Plaintiff does not cite to any evidence in the record which supports his statement that he would fail any required drug test.  As such, the Court concludes that it was not arbitrary and capricious for Liberty Life to fail to address any potentially applicable federal safety regulations in determining whether Plaintiff was disabled under the Policy.

### D.  Treating physicians

Plaintiff maintains that Liberty Life acted arbitrarily and capriciously when it disregarded without reasons the medical opinions of Plaintiff's treating physicians: Michael Rohmiller, M.D., orthopedic surgeon; Justin Kruer, M.D., a pain management specialist, Gregory J. Delorenzo, M.D., a rheumatologist; and Robert W. Noelker, Ph.D., a licensed clinical psychologist.

The "treating physician rule" which gives deference to the opinions of treating physicians in Social Security cases does not apply in an ERISA case.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); *Cooper v. Life Ins. Co. of N. Amer.* 486 F.3d at 167 (6th Cir. 2007).  However, "[g]enerally speaking, a plan may not reject summarily the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion."  *Elliott v.*

*Metro. Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006) (citing *Evans v. Unumprovident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) ("[A] plan administrator may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician."); *but see Black & Decker*, 538 U.S. at 832, 123 S.Ct. 1965 ("[I]f a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'").

Plaintiff points out that Dr. Rohmiller's letter of July 18, 2013 concludes: "Having stated all of the above and given the fact current prescribed medications causes significant drowsiness and after review of the patient's job description, which is primarily sedentary, it is obvious Mr. Rothe remains disabled and cannot perform the duties of his or of any occupation." (LL00179).  As discussed above, this statement was addressed in Dr. Monti's Clinical Case Review Report and included in the April 23, 2014 denial of benefits letter form Liberty Life.  Dr. Monti noted that there was nothing in either Dr. Rohmiller's treatment notes or the other medical records to support Dr. Rohmiller's statement that Plaintiff's medication caused drowsiness.  In their Medical Evidence Report, Dr. Milton Klein and Dr. Peter Sugerman also concluded that the medical evidence did not support adverse side effects from Plaintiff's medication.  It was not arbitrary and capricious for Liberty Life to reject Dr. Rohmiller's statement.  A plan administrator is not required to defer to the opinion of a treating physician that is inconsistent with the physician's own treatment records and objective findings.  *See Creech v. UNUM Life Ins. Co. of N. Am.*, 162 Fed.Appx. 445, 454 (6th Cir. 2006).

With regards to Dr. Rohmiller's opinion that Plaintiff cannot perform the duties of his occupation, Dr. Rohmiller made a similar statement on Liberty Restrictions Form

dated October 23, 2013.  (LL00557).  Dr. Rohmiller opinied that Plaintiff is "unable to work secondary to pain in cervical and lumbar spine."  (LL00557).  Dr. Rohmiller stated that Plaintiff was restricted to "MAX work, 2 hrs./day."  (LL00557).

In a letter dated September 23, 2014, Dr. Kruer states: "In my opinion, I do not feel that Mr. Rothe is able to perform his daily duties at Duke Energy as he is unable to stay in one position (sitting or standing) for greater than 20-30 minutes at a time. His lifting restriction is 10 lbs. His pain also prevents him from being attentive for a 12 hr shift when he is supposed to be monitoring computer terminals."  (LL00184).

In a letter dated September 4, 2014, Dr. Noelker's states: "After reviewing the provided job description, and given his current condition, we find him to be unable to perform essential parts of his job duties."  (LL00183).

In its December 24, 2014 denial letter, Liberty Life recognized that Plaintiff's "providers maintain that Mr. Rothe cannot perform his job duties for Duke Energy." (LL00090).  However, Liberty Life denied benefits based on the determination that Plaintiff's "medical conditions are not of a nature of severity that would preclude him from performing the material and substantial duties of his own occupation."  Under the policy, "own" occupation is Plaintiff's "occupation as it is normally performed in the national economy," and is not defined by the job description of Gas Controller as it is performed at Duke Energy.

In addition, the Sixth Circuit has found that denial of benefits was not arbitrary and capricious "when, although the treating physician believed the claimant was 'totally disabled,' other medical evidence indicated that the claimant could perform sedentary work."  *Cox v. Standard Ins. Co.*, 585 F.3d 295, 302 (6th Cir. 2009) (citing *Smith v.*

*Ameritech*, 129 F.3d 857, 864 (6th Cir. 1997).  Here, Liberty Life relied upon the July 9, 2013 Independent Peer Review Report of Dr. Jamie Lee Lewis, the December 11, 2013 Clinical Case Review Report of Dr. David Monti, Jr., and the November 24, 2014, Medical Evidence Report of Dr. Milton Klein and Dr. Peter Sugerman.

In his report, Dr. Monti found that Plaintiff has neck pain and limited range of motion in his neck which would cause the following restrictions and limitations: (1) push, pull, lift occasionally up to 20 pounds and frequently up to 10 pounds; (2) no limits on sitting, standing and walking; (3) has occasional overhead use of the arms; (4) no static positions of the neck greater than 60 minutes at a time with a change in position for 10 minutes; (5) no repetitive bending or twisting of the neck; (6) no limits on fingering, grasping and handling.  (LL00435).  Dr. Monti noted that Dr. Rohmiller and Dr. Kruer indicated that Plaintiff was unable to work, but Dr. Monti found that there is nothing in the medical records to support their position.  (LL00437).

Plaintiff objects to Liberty Life's deference to non-examining consulting physician Dr. Monti and his report.  However, an insurance company may validly rely upon the opinions of non-treating physicians who review only paper records.  *Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006).

Plaintiff takes issue with Dr. Monti's report because it includes a factually incorrect assertion that "there are no significant findings on MRI or physical exam and therefore there does not appear to be any restrictions and limitations related to low back pain."  Plaintiff explains this disregards the lumbar MRI findings by Drs. Rohmiller and Dr. Kruer; and Dr. Kruer's finding upon physical exam that the patient exhibited only 50 degrees of flexion of the lumbar spine, and lumbar paraspinal tenderness and spasm.

The Court notes that this is not an instance where the plan acted arbitrarily and capriciously in part because it "ignored key pieces of evidence" and made "factually incorrect assertions."  *Shaw v. AT & T Umbrella Ben. Plan No. 1*, 795 F.3d 538, 548 (6th Cir. 2015) (quoting *Butler v. United Healthcare of Tenn., Inc.*, 764 F.3d 563, 568 (6th Cir. 2014)).   It was Dr. Monti's *opinion* that the findings were not significant. (LL00436).   Dr. Monti was also of the opinion that Plaintiff's low back pain seemed "excessive."  Dr. Monti noted that Dr. Rohmiller stated that the pain does not correlate with the L4-5 disk bulge; and even though Dr Kruer provided epidural injections, there was no evidence of radiculopathy and the pain was axial related.   (LL00436).   Moreover, on March 14, 2014 Dr. Arvin Gallanosa, a Fellow of the American Academy of Physical Medicine and Rehabilitation, conducted an independent medical examination of Plaintiff.  (LL00393-398).  Dr. Gallanosa was of the opinion that Plaintiff's subjective complaints regarding his low back are excessive, given the MRI findings. (LL00397).

As the Sixth Circuit has noted: "Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003).  Here, Liberty Life made its determination that Plaintiff was not entitled to benefits based upon the opinions of Dr. Lewis, Dr. Monti, Dr. Klein, Dr. Sugerman and Dr. Gallanosa, as well as "Occupational Analysis/Vocational Review" conducted by the Vocational Case Manager Ellen Levine.

Liberty Life noted that one of the reviewing physicians sent a letter to Drs. Rohmiller and Kruer to give them an opportunity to comment or express disagreement with the restrictions and limitations found, but the physicians did not respond.  (LL00383).

The Court remains aware that Liberty Life was operating under a conflict because it determines eligibility for benefits and then is also responsible for paying those benefits.  However, there is no evidence in this record that the conflict in any way influenced the plan administrator's decision.  *Accord Evans*, 434 F.3d at 876 (citing *Carr v. Reliance Standard Life Ins. Co.*, 363 F.3d 604, 606 n. 2 (6th Cir. 2004).  The Court also has considered that most of the consulting physicians relied upon by Liberty Life did not examine Plaintiff.  As the Sixth Circuit has explained: "The plan administrator's failure to require a physical examination 'may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination.'"  *Calvert*, 409 F.3d at 295. However, in this instance, Plaintiff also underwent an independent medical examination and the medical evidence was reviewed by multiple consulting physicians.

Even in light of these identified conflicts, Liberty Life's decision was not arbitrary and capricious.  Liberty Life provided a reasoned explanation, based on the evidence, that Plaintiff's medical conditions are not of a nature or severity that would preclude him from performing the material and substantial duties of his Own Occupation, as that term is defined in the Policy.  The decision to deny benefits must "be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence."  *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (quoting *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

15

III.    **CONCLUSION**

Based on the foregoing, the Motion for Judgment filed by Defendants Duke Energy Long Term Disability Plan and Liberty Life Assurance Company of Boston (Doc. 12) is **GRANTED**; and the Motion for Judgment filed by Plaintiff Stanley D. Rothe (Doc. 13) is **DENIED**.

This matter is **CLOSED** and **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

             */s/ Michael R. Barrett*
JUDGE MICHAEL R. BARRETT